IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>CHARLES H. DURR, DC, JOSEPH M. CHILDS, DC, AND ACTIVE INTEGRATED MEDICAL CENTERS, PC<br><br>*Defendants*. | Civil Action No. |

# COMPLAINT

The United States of America brings this action to enforce its Settlement Agreement of January 2, 2024 (the "Settlement Agreement") with Defendants Charles H. Durr, DC ("Defendant Durr"), Joseph M. Childs, DC ("Defendant Childs"), and Active Integrated Medical Centers, PC ("AIMC," and collectively with Defendants Durr and White, the "Defendants"). The Settlement Agreement is attached hereto as Exhibit 1. Although the United States has offered to extend the time for Defendants to make the payments required under the Settlement Agreement, Defendants have refused to discuss a modified payment schedule and have failed to make the first two scheduled payments.

**I.    THE PARTIES**

1.     Plaintiff, the United States of America, brings this action on behalf of the Department of Health and Human Services ("HHS") and the Centers for Medicare & Medicaid Services ("CMS"), on behalf of the Medicare Program.

1

2. Defendant Durr is a chiropractor and co-owner of AIMC. Mr. Durr is a Pennsylvania resident and resides in the Eastern District of Pennsylvania.

3. Defendant Childs is a chiropractor and co-owner of AIMC. Mr. Childs is a Pennsylvania resident and resides in the Eastern District of Pennsylvania.

4. Defendant AIMC is a Professional Corporation organized under the laws of Pennsylvania that operated, at all relevant times, at the following two locations: AIMC – Downingtown, 797 East Lancaster Ave, Suite 6, Downingtown, PA 19335; and AIMC – Hershey, 555 East Chocolate Ave, Suite 201, Hershey, PA 17033.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345. This civil action is brought by the United States as a plaintiff to enforce the Settlement Agreement, which was intended to resolve its causes of action against Defendants under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) (the "FCA").

6. The Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants can be found in and/or have transacted business within the Eastern District of Pennsylvania.

7. Venue is proper in the Eastern District of Pennsylvania under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and 1395(a) because Defendants can be found in and/or have transacted business in the district. Defendants regularly conducted substantial business within the district, maintained employees and offices within the district, and/or generated significant revenue from work performed within the district. Furthermore, the Settlement Agreement provides that "[t]he exclusive jurisdiction and venue for any dispute relating to

this Agreement is the United States District Court for the Eastern District of Pennsylvania."

Ex. 1, ¶ 13.

### III. THE LAW

8. The FCA provides, in pertinent part, that any person who:

> "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent; [or]
>
> (C) conspires to commit a violation of subparagraph (A) [or] (B) . . .

is liable to the United States Government [for statutory damages and such penalties as are allowed by law]." 31 U.S.C. §§ 3729(a)(1)-(3) (2006), as amended by 31 U.S.C. § 3729(a)(1)(A)-(C) (2010).

9. The FCA further provides that "knowing" and "knowingly"

> "(A) means that a person, with respect to information—
>
> i. has actual knowledge of the information;
> ii. acts in deliberate ignorance of the truth or falsity of the information; or
> iii. acts in reckless disregard of the truth or falsity of the information; and
>
> (B) requires no specific intent to defraud."

31 U.S.C. § 3729(b) (2006), as amended by 31 U.S.C. § 3729(b)(1) (2010).

10. The Settlement Agreement contains a choice of law clause which provides that it is "governed by the laws of the United States." Ex. 1, ¶ 13. In addition, "when the United States is a party to a contract, federal common law governs that contract." *E.O.H.C. v. Sec'y of United States Dep't of Homeland Sec.*, 950 F.3d 177, 192 (3d Cir. 2020).

11. Settlement agreements are treated as binding contracts. *Enter. Energy Corp. v. United States* (*In re Columbia Gas Sys., Inc.*), 50 F.3d 233, 238 (3d Cir.1995). Thus, settlement agreements are construed according to traditional principles of contract law. *Coltec Indus. v. Hobgood,* 280 F.3d 262, 269 (3d Cir. 2002) (citing *In Re Cendant Corp. Prides Litig.,* 233 F.3d 188, 193 (3d Cir. 2000) ("[b]asic contract principles ... apply to settlement agreements...").

12. Under federal common law, a breach of contract claim requires: "(1) the existence of a valid contract between the parties; (2) an obligation or duty arising from that contract; (3) a breach of that duty; and (4) damages caused by that breach." *Marinaccio v. United States*, 2022 WL 2833960 (D.N.J. July 20, 2022) (quoting *United Launch Servs., LLC v. United States*, 139 Fed. Cl. 664, 681 (2018)).

IV. **FACTUAL BACKGROUND**

　　A. **The Government's Investigation and the Parties' Settlement Negotiations**

13. In May 2021, the United States served a Civil Investigative Demand ("CID") upon AIMC pursuant to the FCA. The FCA investigation generally concerned whether Defendants submitted, or caused to be submitted, false claims to Medicare, Medicaid, or other federal insurers for so-called "electric cell signaling treatment" using the neoGEN-series device marketed by RST Sanexas, Inc., as well as vitamin injections and other ancillary testing.

14. In response to the CID, Defendants made several document productions and provided interrogatory responses.

15. On November 17, 2022, a Special Agent for the Department of Health and Human Services, Office of Inspector General, interviewed Defendant Durr, who also appeared on behalf of AIMC. Defendant Durr was represented at the interview by counsel

(Michael J. McCarrie, Esq.).[1] During the course of the interview, Defendant Durr made various admissions supporting the United States' FCA claims.

16. Settlement discussions ensued.

17. As part of settlement discussions, Defendants voluntarily provided documentation regarding their financial condition and ability to pay a monetary settlement.

18. After several rounds of negotiation, by email on September 13, 2023, the United States accepted the terms of a settlement in principle that Defendants had proposed.

19. On October 5, 2023, the United States emailed Defendants' counsel a draft settlement agreement, which was subject to further review and approvals before it could be finalized.

20. By email on November 1, 2023, Defendants' counsel provided a signed copy of the draft settlement agreement with no revisions.

21. On December 8, 2023, the United States emailed Defendants' counsel a revised settlement agreement with minimal substantive changes.

22. On December 13, 2023, Defendants' counsel emailed the United States a "signed Settlement Agreement for your records," which bears the original signatures of Defendants Durr and Childs, personally and as co-owners of AIMC, as well as the signature of Defendants' counsel.

23. Later on December 13, 2023, the United States advised Defendants' counsel that "the scanned copy you sent has some pages out of order and missing" and asked for permission to use a cleaned up version as the final version going forward. Defendants'

---

[1] Mr. McCarrie represented Defendants until he was replaced by Michael J. Khouri, Esq., in early April 2024. *See infra* ¶ 35.

counsel responded one minute later, stating, "Yes. Sorry for the inconvenience." The United States then replied that it would send the "the fully signed version and Fedwire instructions when they become available."

24. On December 18, 2023, the United States emailed Defendants' counsel a secure message containing the Fedwire instructions used to remit the payments owed under the Settlement Agreement. Shortly thereafter, an email sent from Defendants' counsel's account replied "Received."

25. On January 2, 2024, the United States emailed a fully executed Settlement Agreement to Defendants' counsel. Shortly thereafter, an email sent from Defendants' counsel's account replied, "I will inform you once the first payment is made."

26. Subsequent to Defendants' signature of the Settlement Agreement on December 13, 2023, and through early January 2014, Defendants' counsel was the target of a business email compromise. As a result, Defendants ultimately misdirected certain payments to a malicious actor.

### B. The Settlement Agreement

27. The "Recitals" section of the Settlement Agreement discusses Defendants' submission of false claims in significant detail (the "Covered Conduct") and liability under the FCA. *See* Ex. 1 at *1-5.

28. Paragraph 1 of the "Terms and Conditions" section of the Settlement Agreement obligates Defendants to make certain payments to the United States and is copied below in full:

> 1. AIMC shall pay to the United States $1,900,000 ("Settlement Amount"), of which $1,284,727.97 is restitution, plus interest at a rate of 3.875% accruing monthly from September 28, 2023, as follows:

    a. AIMC shall pay $300,000 of the Settlement Amount on or before December 15, 2023;

    b. AIMC shall pay a second installment of $500,000 on or before April 15, 2024;

    c. AIMC shall pay $150,000 payment on or before July 15, 2024, recurring in the same amount every 90 days thereafter until a final payment in full of the remaining Settlement Amount and accrued interest.

    d. AIMC shall pay the Settlement Amount by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office of the Eastern District of Pennsylvania.

    e. AIMC, PC, Dr. Durr, and Dr. Childs agree that they are jointly and severally liable for the Settlement Amount.

29.    The Settlement Amount of $1.9 million is identical to the amount that the parties accepted in principle on September 13, 2023. Furthermore, Paragraph 1 of the Settlement Agreement is materially identical (except with respect to the dates of payment) to the signed draft settlement agreement that Defendants' counsel emailed to the United States on November 1, 2023.

30.    In exchange for Defendants' "full payment of the Settlement Amount," the United States agreed to release Defendants from any civil or administrative claims the United States has for the Covered Conduct, subject to certain exceptions. Ex. 1, ¶ 2. In particular, the United States specifically reserved and did not release "[a]ny liability based upon obligations created by this Agreement." Ex. 1, ¶ 3(e).

**C.    Events Following the Settlement Agreement**

31.    In mid-January 2024, the United States learned that Defendants may have

difficulty timely making the payments required under the Settlement Agreement in light of the business email compromise *See supra* ¶ 26.

33. On March 20, 2024, the United States emailed Defendants' counsel, as well as new counsel (Mullen Law) that Defendants' counsel engaged to investigate the business email compromise, to discuss next steps in light of the payment deadlines under the Settlement Agreement.

33. On March 22, 2024, the United States, Defendants' counsel, and Mullen Law discussed the possibility of extending the payment deadlines in Paragraph 1 of the Settlement Agreement in order to allow Defendants more time to gather the necessary funds.

34. On April 4, 2024, the United States emailed Defendants' counsel and Mullen Law a draft amendment to the payment schedule in Paragraph 1 of the Settlement Agreement, which proposed to extend all deadlines by four months, such that the first payment would be due on April 15, 2024.

35. On April 12 and 15, 2024, Michael J. Khouri, Esq. advised that he was replacing Mr. McCarrie as counsel for Defendants. On April 15, 2024, the United States emailed Mr. Khouri a copy of the Settlement Agreement and the draft amendment to the payment schedule that had been provided to Mr. McCarrie.

36. On April 18, 2024, Mr. Khouri advised the United States by phone that Defendants would not pay the amounts owed under the Settlement Agreement.

37. By email on May 2, 2024, Mr. Khouri provided "notice to the Government that Charles Durr DC rescinds the settlement agreement in the above referenced matter." Mr. Khouri also stated: "Rescission is based upon a failure of consideration and failure of conditions among other reasons. As you know this position is based upon the cyber theft of

approximately $700,000 of my client's money that was intended for the government." The "cyber theft" is Mr. Khouri's description of the business email compromise referred to in Paragraph 26, *supra*.

38. On May 10, 2024, the United States sent a letter to Mr. Khouri via email providing formal notice of its intent to file suit in the event that the outstanding amounts were not paid by May 17, 2024.

39. Defendants have failed to make the initial payment of $300,000 (due on or before December 15, 2023) and second payment of $500,000 (due on or before April 15, 2024).

40. The United States is not in breach of any of its obligations pursuant to the Settlement Agreement.

## Count I
**(Breach of Contract Against All Defendants)**

41. The United States incorporates by reference the paragraphs above as if fully set forth in this Paragraph.

42. The Settlement Agreement is a valid contract between the United States and Defendants.

43. The Settlement Agreement obligated Defendants to remit the initial payment of $300,000 (due on or before December 15, 2023) and second payment of $500,000 (due on or before April 15, 2024) to the United States.

44. Defendants materially breached the Settlement Agreement by failing to remit the initial payment of $300,000 (due on or before December 15, 2023) and second payment of $500,000 (due on or before April 15, 2024) to the United States.

45. By offering to extend the payment schedule, the United States afforded

Defendants an opportunity to cure their material breach.

46. Defendants rejected the United States' offer to extend the payment schedule and informed the United States that they have no immediate plans to pay the monies owed. Accordingly, Defendants have failed to cure their material breach.

47. Defendants' failure to remit the payments required under the Settlement Agreement has damaged the United States.

48. Defendants have no valid legal basis for "rescind[ing]" the Settlement Agreement.

49. The United States is not in breach of any of its obligations under the Settlement Agreement.

50. Defendants are liable to the United States for damages in an amount to be determined at trial, but not less than the Settlement Amount of $1,900,000, plus interest, fees, and costs.

## V. PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in its favor against Defendants, jointly and severally, as follows:

I. On the First Count, for the amount of $1,900,000, plus interest accruing monthly at a rate of 3.875% from September 28, 2023, fees, and costs, and for all such further relief as may be just and proper.

II. A judgment that the Settlement Amount of $1,900,000, plus interest accruing monthly at a rate of 3.875% from September 28, 2023, relates to Defendants obtaining money from the Medicare Program by false pretenses, false representations, and/or actual fraud.

## VI. DEMAND FOR A JURY TRIAL

51. The United States demands a jury trial.

DATED: June 12, 2024

JACQUELINE C. ROMERO
United States Attorney
Eastern District of Pennsylvania

/s/ Gregory B. David
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division
ERIC S. WOLFISH
Special Assistant United States Attorney